IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

STEPHEN HARPER,

   Plaintiff,

    v.

CITY OF LOCUST GROVE
a Georgia Municipal Corporation, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:13-CV-1774-TWT

**OPINION AND ORDER**

The Plaintiff, Stephen Harper, claims that City of Locust Grove police officer Hal Weiner used excessive force on Harper when responding to an excessive noise complaint. Specifically, Harper contends that Weiner shot him in the back with his Taser. Harper further contends that the Locust Grove mayor and chief of police, also Defendants here, intervened after the incident to stifle a complaint from Harper's neighbor and to encourage Harper to admit he was disturbing the peace. Harper seeks to hold the city, the mayor, the police chief, and Weiner liable. Harper's claims against the city, the mayor, and the police chief must be dismissed, however, because Harper has not pled facts to show that Weiner's actions are attributable to the other Defendants.

## I.  Background

The Plaintiff, Stephen Harper, brings claims against the City of Locust Grove; Robert Price, the mayor of Locust Grove; Jesse Patton, the chief of police of the City of Locust Grove; and Hal Weiner, an officer employed by the City of Locust Grove Police Department. Harper contends that the Defendants were acting under the color of state law when they deprived him of his rights under the Fourth and Fourteenth Amendments. (Compl. ¶¶ 1-6).

According to the Plaintiff, the City of Locust Grove police responded to a call about loud music coming from the Plaintiff's property in the early evening of October 22, 2012. There was no music playing when the police arrived at Harper's residence. The responding officers, Weiner and another unnamed officer, initially spoke with Harper's wife. She informed the officers that Harper had been working in the tool shed in the backyard, that Harper did not have any weapons, and that Harper was hard of hearing. After speaking to Harper's wife, Weiner confronted Harper in his backyard and told him that he would be taken to jail if there was another call to his address. (Compl. ¶¶ 6-9).

Harper in turn asked Weiner if Weiner had in fact heard any loud music. In response, Weiner began repeatedly asking Harper "You don't like the police?" At this point, Harper, standing approximately six feet from Weiner, stuck his middle finger

up at the officer, said F---- Y--, and turned back toward his tool shed. Then, without warning, Weiner discharged his Taser into the Plaintiff's back, causing the Plaintiff to fall forward into his shed and sustain injuries to his head, face, and shoulder. The Plaintiff's injuries have permanently disabled him. (Compl. ¶¶ 10-15, 19). After this, Weiner left the back yard and crossed Harper's neighbor's front yard to return to his patrol car. The Plaintiff's neighbor observed Weiner laughing loudly, grabbing his genitals and shaking them, and making a phone call on his cell phone during which he stated "Yeah, I got him, I got him really good." (Compl. ¶ 18).

Later, Price, the mayor of the City of Locust Grove, visited the Plaintiff, observed his injuries, and spoke with his wife. Separately, the Plaintiff's neighbor sought out the mayor to file a complaint against Weiner for the conduct she had observed. The Plaintiff alleges that Price dissuaded the Plaintiff's neighbor from filing a complaint by assuring her that he would investigate. However, no investigation took place. (Compl. ¶¶ 20-24).

The next day, after both Price and Patton, the chief of police, were aware of the incident, Weiner submitted a police report and issued the Plaintiff a written citation for disturbing the peace. The Plaintiff alleges that Price then visited various Locust Grove officials to discuss the incident, including a local judge, and repeatedly visited the Plaintiff to urge him to plead guilty to the disturbing the peace violation. Price told

Harper that if he did not plead guilty he could end up with a charge on his record and possibly spend time in jail. Price specifically stated that he had spoken to the judge and that, if Harper pled guilty, he would only have to pay a fine. Price even offered to loan Harper money to cover the fine. At Price's behest, Harper eventually pled guilty to the violation and was fined five hundred dollars. (Compl. ¶¶ 24-31).

The Plaintiff filed his complaint on May 28, 2013. He asserts that Weiner acted under the color of law and used excessive force when he discharged his Taser into the Plaintiff's back. Harper further claims that all Defendants were acting in the scope of their employment for the City of Locust Grove, and acting pursuant to the city's policies, practices, procedures, and customs. He also states that Price and Patton hold final decision making authority for the City of Locust Grove, and that they knowingly approved Weiner's conduct and ratified his actions as well as the basis for his actions. He brings claims against all Defendants for excessive use of force in violation of the Fourth Amendment, for battery, and for aggravated battery. (Compl. ¶¶ 31-47). The Defendants move to dismiss all claims against the City of Locust Grove, Price, and Patton, leaving only the claims against Weiner in his individual capacity. The Defendants previously moved to stay discovery, and the Court granted that motion on October 24, 2013 [Doc. 14].

## II.  Motion to Dismiss Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." Bell Atlantic v. Twombly, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983); see also Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 127 S.Ct. at 1964).

### III.  Discussion

### A.    The Plaintiff's Claims Against the City of Locust Grove[1]

The Defendant Locust Grove argues that Weiner's actions are not attributable to the city.  The Plaintiff argues that Weiner's actions are attributable to the city under a ratification theory. "For plaintiffs to state a successful § 1983 claim against a municipality based on a ratification theory, … 'they must demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis.'" Garvie v. City of Ft. Walton Beach, Fla., 366 F.3d 1186, 1189 (11th Cir. 2004) (quoting Thomas v. Roberts, 261 F.3d 1160, 1175 n.12 (11th Cir. 2001)).

Here, assuming that Price and Patton were final policymakers, the Plaintiff has not alleged facts to show that they approved Weiner's decision to discharge his Taser on the Plaintiff, or his reasons for doing so. With respect to Patton, the chief of police, there are no allegations that he was aware of the facts underlying Weiner's decision to discharge his Taser, that he had an opportunity to review Weiner's decision, or that he agreed with the decision and its basis. Indeed, there are no allegations concerning Patton except the allegation that he became aware of Weiner's actions.

---

[1] The Defendants also moved to dismiss the official capacity claims against Price, Patton, and Weiner.  However, the Plaintiff only brings individual capacity claims against those Defendants.

The allegations concerning Price, while more extensive than the allegations concerning Patton, do not establish that Price knew the reasons underlying Weiner's decision or that he approved of those reasons. The allegations state that Price visited the Plaintiff and his wife after the incident and then forcefully worked to convince the Plaintiff to plead guilty to disturbing the peace. There is no allegation that Price spoke to Weiner before or after the incident.  While Price did not investigate the incident despite telling Harper's neighbor that he would, Price's failure to investigate does not make Weiner's actions attributable to the city. See City of St. Louis v. Praprotnik, 485 U.S. 112, 130 (1988) ("[T]he mere failure to investigate the basis of a subordinate's discretionary decisions does not amount to a delegation of policymaking authority, especially where (as here) the wrongfulness of the subordinate's decision arises from" an impermissible motive.). Although the Plaintiff's neighbor complained to Price about Weiner's conduct, she was complaining about Weiner's behavior following the incident, not during the incident itself. Overall, the allegations do not show that Price believed Weiner may have used excessive force or that Price believed that Weiner was illicitly motivated to use his Taser on the Plaintiff, or that Price affirmed Weiner's motivation. Accordingly, the Plaintiff has not pled facts to show that Price's actions amounted to a ratification of Weiner's conduct.

Further, the cases the Plaintiff cites as supporting a ratification theory of municipal liability require much deeper policymaker involvement in the underlying incident than there was here. For instance, in Goodson v. City of Atlanta, 763 F.2d 1381, 1388 (11th Cir. 1985), the Court affirmed municipal liability because there was credible evidence that the city and final policymakers knew of deplorable conditions in a jail and that the policymakers condoned the conditions "to such a degree that they became part of the policy, custom, practice, and procedure" of the municipality. Here, the final policymakers did not know of Weiner's conduct until after the fact, and Price and Patton did not endorse his actions before and after the fact to such an extent as to show it was the City of Locust Grove's policy. Likewise, in Praprotnik, 485 U.S. at 127, the Court stated that "when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies." Id. However, there are no allegations here that either Price or Patton retained the authority to review Weiner's decision to discharge his Taser. Because there is no indication that Weiner's actions were reviewed by the city's authorized policymakers, including the chief of police and the mayor, the predicate for establishing municipal liability through ratification is absent. The necessary element of causation is absent here. Accordingly, the Plaintiff

cannot establish municipal liability and the Defendants' motion to dismiss should be granted with respect to claims against the City of Locust Grove.

### B.    The Plaintiff's Claims Against Price and Patton

Patton and Price contend that the Plaintiff has not alleged facts to support his claims for battery, aggravated battery, and use of excessive force against Patton and Price, and further that they are protected by qualified immunity. "Under the doctrine of qualified immunity, government officials acting within their discretionary authority are immune from suit unless the official's conduct 'violates clearly established federal statutory or constitutional rights of which a reasonable person would have known.'" Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010) (quoting GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1366 (11th Cir. 1998)(internal alterations omitted)). In determining whether an official is entitled to qualified immunity, the Court must decide "whether the plaintiff's allegations, if true, establish a constitutional violation" and "whether the constitutional violation was clearly established." Id. (quoting Hope v. Pelzer, 536 U.S. 730, 736 (2002) and Saucier v. Katz, 533 U.S. 194, 201 (2001)).

Here, even assuming that Weiner's conduct violated clearly established constitutional rights, there are simply no allegations that Price or Patton themselves violated the Plaintiff's rights. The Plaintiff argues that, after Weiner injured the

Plaintiff, "Price and Patton immediately went into hyperdrive, seeking to cover-up the shooting and prevent any investigation or complaint… this raises questions of fact as to whether they, believing that excessive force had occurred and that it was in retaliation for Harper's bad attitude, ratified it and are liable on that basis." (Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss, at 16). However, the Plaintiff does not cite any law explaining how Price and Patton can be individually liable on a ratification theory. The cases that the Plaintiff cites only address whether Weiner's actions could be considered excessive force.

Even construing the Plaintiff's argument as one for supervisory liability, the individual claims against Price and Patton must be dismissed. "It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Thompson v. Bliss, No. 8:11-cv-839, 2011 WL 4975548, at *4 (M.D. Fla. Oct. 19, 2011) (quoting Miller v. King, 384 F.3d 1248, 1261 (11th Cir. 2004)). "A supervisory official is only liable under § 1983 'for the unconstitutional acts of her subordinates if there is a causal connection between her actions and the alleged constitutional deprivation.'" Powell v. Sheriff, Fulton Cnty., Ga., 511 Fed. Appx. 957, 961 (11th Cir. 2013), cert. denied, 134 S. Ct. 513 (2013) (quoting West v. Tillman, 496 F.3d 1321, 1328 (11th Cir. 2007) (internal alterations omitted)).

> The necessary causal connection exists when: (1) "a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation *and he fails to do so*"; (2) "a supervisor's custom or policy results in deliberate indifference to constitutional rights"; (3) "facts support an inference that the supervisor directed the subordinates to act unlawfully"; or (4) facts support an inference that the supervisor "knew that the subordinates would act unlawfully and failed to stop them from doing so."

Id. (quoting Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), vacated on other grounds, 449 F.3d 1149 (11th Cir. 2006)). "The standard for supervisory liability is 'extremely rigorous.'" Id. (quoting Cottone, 326 F.3d at 1360).

Here, the allegations fall far short of establishing supervisory liability. There are no allegations that either Price or Patton knew or should have known that Weiner had a history of widespread abuse of his Taser. There are no allegations that Price or Patton had a custom or policy of showing indifference to constitutional deprivations. The allegations state that Price was concerned about the Plaintiff's deprivation of rights rather than indifferent, and, again, there no allegations with respect to Patton except that he became aware of Weiner's actions. Finally, because there are no allegations suggesting that Price or Patton knew or could have known ahead of the incident that Weiner may use excessive force against Harper, neither Price nor Patton could have directed Weiner to use force or failed to stop him from doing so. Accordingly, the Plaintiff cannot establish liability for excessive use of force, battery,

or aggravated battery against Price and Patton. The Defendants' motion to dismiss should be granted on these grounds.

## IV. Conclusion

For the reasons set forth above, the Defendants' Partial Motion to Dismiss [Doc. 5] is GRANTED.

SO ORDERED, this 3 day of January, 2014.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge